Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-09-00328-CR

Michael **IBANEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-0088
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
        Phylis J. Speedlin, Justice
        Marialyn Barnard, Justice

Delivered and Filed:  July 7, 2010

AFFIRMED

A jury found Michael Ibanez guilty of the felony offense of murder.  On appeal, Ibanez argues the evidence is factually insufficient to support his conviction and the jury's implicit rejection of his alibi defense.  We affirm the trial court's judgment.

### FACTUAL BACKGROUND

On the day of the murder, a group of individuals, including Ibanez and the victim Anthony Garcia, spent the early morning hours drinking alcohol and smoking marijuana.  Later,

Garcia and Ibanez argued, possibly over money or a gun. After the argument, Ibanez and his girlfriend left, but Garcia and two others, Damien Deleon and Garcia's girlfriend, Samantha Cruz, remained at the apartment. At the apartment, Garcia went to sleep, but Deleon and Cruz talked for a short while before Deleon went to bed. Cruz went outside to smoke and to find out the name of the apartment complex so her mother could pick her up.

At trial, Cruz testified that while she was outside, she saw Ibanez and another man sitting in a parked car near the front of the apartment complex. Cruz stated Ibanez got out of the car and walked into the apartment. He was holding a gun. Cruz followed Ibanez inside and immediately went to wake up Garcia. Cruz testified she was unable to wake Garcia. She said Ibanez then entered the bedroom, pointed the gun at them, and shot Garcia, who was sleeping on his stomach, in the back of the head. After the shooting, Ibanez ran. Cruz woke Deleon, and called her mother, who called police.

Police subsequently asked Cruz to view a photo array, which included a picture of Ibanez taken from his driver's license. Cruz identified Ibanez as the person who shot Garcia. Police arrested Ibanez, and he was later indicted for the murder of Garcia. A jury found Ibanez guilty, and after finding the repeat offender enhancement paragraph true, the trial court sentenced Ibanez to forty years imprisonment.

## STANDARD OF REVIEW

We begin a factual sufficiency review with the assumption that the evidence is legally sufficient to support the jury's verdict. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). When determining whether the evidence is factually sufficient to support a conviction, we must view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App.

2009). In addition, we must defer to the jury's findings and may not reweigh the evidence to set aside the verdict simply because we disagree with it. *Id*. (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Resolution of conflicts in the evidence is within the exclusive province of the jury, and the jury is free to accept or reject any portion of a witness's testimony. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Evidence is deemed to be factually insufficient only when the evidence presented to support the conviction is "too weak" to support the jury's verdict or when considering the conflicting evidence, the jury's verdict is "against the great weight and preponderance of the evidence." *Laster*, 275 S.W.3d at 518 (quoting *Watson v. State*, 204 S.W.3d 404, 406 (Tex. Crim. App. 2006)). Evidence may also be deemed factually insufficient if necessary to "prevent a manifest injustice." *Laster*, 275 S.W.3d at 518 (quoting *Cain*, 958 S.W.2d at 407).

## DISCUSSION

Ibanez first argues that because the only evidence in support of his guilt, i.e. Cruz's testimony, was contradicted by physical evidence, testimony of other witnesses, and even other testimony by Cruz, the evidence was insufficient to support his conviction.

To prove a defendant committed the offense of murder, the State must establish the defendant intentionally or knowingly caused the victim's death, or intended to cause serious bodily injury to the victim and committed an act clearly dangerous to human life that caused the victim's death. TEX. PENAL CODE ANN. § 11.02(b)(2) & (3) (Vernon 2003). Proof of culpable mental state invariably depends on circumstantial evidence, and the jury may determine the defendant's mental state from evidence of the defendant's acts, words, or conduct. *See*

*Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

At trial, the State introduced into evidence the testimony of three people who were with Garcia the night of the murder: Deleon, Cruz, and Krystal Torres. According to Deleon, he, Ibanez, Ibanez's girlfriend, and Garcia were at an apartment belonging to Ibanez's uncle. Everyone was drinking and smoking marijuana. Deleon also took a Xanex. Deleon stated two more girls arrived between 8:00 and 10:00 p.m., but he could not remember exactly when they arrived or who they were; however, both were there to see Garcia. Deleon also testified both he and Ibanez had a gun. Later, Deleon, Ibanez, Ibanez's girlfriend, Garcia, and Cruz left for Deleon's apartment. He stated it was late "like 3:00, 4:00, 5:00 in the morning," but he was unsure of the exact time. When asked how Cruz came into the picture, Deleon testified he could not remember whether they picked her up earlier that evening or she came on her own, but he was confident she was present when they arrived at his apartment. Deleon testified he recalled Garcia and Ibanez arguing outside his apartment about "something," and guessed it had to do with money. Deleon then testified he recalled Ibanez saying he "was going to go get something and then they were going to come back or something." Deleon, however, testified he was also "pretty wasted" that night, but remembered offering to allow Garcia to sleep in the apartment. Thereafter, he went to his room, went to sleep, and awoke only when he heard Cruz crying and telling him Garcia had been shot. Deleon testified he never heard any shots. According to Deleon, he walked Cruz outside, where her mother picked her up, and he went next door to his girlfriend's apartment and gave his girlfriend his gun, which had been under his bed.

Torres testified that on the day of Garcia's murder, she and her cousin met Garcia at a gas station. According to Torres, Garcia arrived in a small four-door car with Deleon, Ibanez, and

Ibanez's girlfriend. The car belonged to Ibanez's girlfriend. Torres testified Garcia got out of the car, talked to her and her cousin, and she and her cousin decided to follow Garcia to the apartment belonging to Ibanez's uncle. According to Torres, when Garcia got back into the car, her cousin saw a beanie with a gun tucked inside of it next to Garcia. Torres testified, however, she did not believe her cousin. Thereafter, she and her cousin followed Garcia and the others to the apartment. When they arrived, Garcia put the beanie and the gun on a table, and Deleon began playing with it. She stated Garcia was not trying to hide the gun. At some point in the evening, she and Garcia went into another room, where they talked and kissed. Torres testified that thereafter, she and her cousin decided to leave, and about that same time, Garcia received a phone call from his girlfriend, Cruz, and he too decided to leave. According to Torres, Garcia said Cruz owed him money. Torres believed they all left at 4:40 a.m.

Cruz testified she had been dating Garcia for the past year, and on the morning of his murder, she was with her friends. She testified she called Garcia later that night, and he came to pick her up. Cruz was unsure who else was in the car when Garcia picked her up, but recalled seeing Deleon. Around 6:00 a.m., they went to an apartment, where they all drank and smoked marijuana for an hour or two. Later, she, Garcia, Deleon, Ibanez, and Ibanez's girlfriend went to Deleon's apartment. When they got to the apartment, Ibanez and Garcia began to argue. Cruz testified Ibanez repeatedly asked where his gun was, and began looking for it in the car, including the trunk. Ibanez then left, and she went inside Deleon's apartment, where she talked to Deleon for a while because Garcia went into one of the bedrooms to sleep. After Deleon went to bed, she went outside to smoke and look for the apartment complex's name so her mother could pick her up. Cruz testified she saw Ibanez and another man parked outside the apartment building. She stated she saw Ibanez get out of the car, followed him into the apartment, but she

went to the bedroom to wake Garcia. Before she could wake Garcia, Ibanez entered the room, pointed a gun at them, and shot Garcia in the back while he was sleeping.

The State also introduced the testimony of Rebecca Hernandez, who lived in the apartment near Deleon's apartment. Hernandez stated she heard four or five gunshots between 8:30 a.m. and 9:00 a.m., and when she looked outside her window, she saw two Hispanic men run from an apartment and get into a car. One man was wearing a white t-shirt and jeans and was clean-cut. She described the car as small and either blue or light blue. She gave this information to police when they arrived. On cross-examination, however, Hernandez admitted she was not wearing her glasses, which she needs to see far distances.

The State also introduced testimony of two San Antonio police officers, a homicide detective, and a medical examiner. Officer Odoms testified he received an emergency tone for a high priority call around 10:00 a.m. When he arrived at the location, he found the apartment front door ajar. However, he had to kick the door in because it was blocked. He and a second officer searched the apartment and found Garcia lying on a mattress. Officer Reyes testified he was the third officer to arrive. He secured the scene until homicide detectives arrived. At trial, Officer Reyes authenticated crime scene photos. The photos depicted the spent cartridges found in the apartment, the entryway of the bedroom, and the bedroom where Garcia was shot. Bexar County Medical Examiner Dr. Jennifer Rulon, M.D., testified Garcia suffered six lethal gunshot wounds, one in his side that traveled right to left, and five shots in his back, one of which severed his spinal cord. The toxicology report showed Garcia had methamphetamine, a small amount of cocaine, and residue of marijuana in his system.

In response to the State's evidence, Ibanez introduced the testimony of one witness, his sister Liana Ibanez. Liana testified she heard Ibanez arrive home around 3:00 a.m. and saw him

sleeping in his bed at that time. Liana testified she went back to bed, but awoke between 7:00 and 7:15 a.m. to dress her son for church. She testified she dressed her son in Ibanez's room, and Ibanez was still asleep. By 8:00 a.m., her husband awoke, and she and her husband saw Ibanez in the house where he remained until at least 10:30 a.m. when they left for church.

Although Ibanez presented evidence he was not present at the time of the shooting, the State presented several witnesses who offered contrary evidence of Ibanez's whereabouts. According to Deleon, Torres, and Cruz, Ibanez was with them until approximately 5:00 a.m. on the day of Garcia's murder. Cruz also testified Ibanez picked her and others up around 6:00 a.m., and both Deleon and Cruz testified Garcia was with them at Deleon's apartment near the time of the shooting. Cruz stated she saw Ibanez with another man in a car just before she saw Ibanez enter Deleon's apartment. Rebecca Hernandez testified she heard gun shots around the same time and saw two men running from the apartment and get into a car. Reconciliation of any conflicts in the evidence regarding Ibanez's presence at Deleon's apartment at the time of the shooting falls within the exclusive province of the jury, and giving deference to the jury's finding, a rational trier of fact could have believed Ibanez was present at Deleon's apartment at the time of the shooting. *See Steadman*, 280 S.W.3d at 246; *Laster*, 275 S.W.3d at 518; *Heiselbetz*, 906 S.W.2d at 504. Circumstantial evidence of intent is supported by the witnesses and officers' characterization of Ibanez's argument with Garcia concerning either money or a gun. *See Montgomery*, 198 S.W.3d at 87; *Patrick*, 906 S.W.2d at 487.

Ibanez also argues that the only evidence of his guilt stems from Cruz's testimony because she was the only witness to hear him allegedly argue with Garcia about a gun and see him allegedly shoot Garcia. The jury is the sole judge of the credibility of the witnesses and of the strength of the evidence and may choose to believe or disbelieve any portion of the witness's

testimony.  *See Jones*, 944 S.W.2d at 648.  Here, it was within the jury's province to believe Cruz's testimony as well as the rest of the State's evidence regarding Ibanez's whereabouts throughout that night.  *See id.*  Therefore, after viewing the evidence in a neutral light, we hold the evidence is not "too weak" to support the jury's verdict and the jury's verdict is not "against the great weight and preponderance of the evidence."  *See Laster*, 275 S.W.3d at 518 (quoting *Watson v. State*, 204 S.W.3d 404, 406 (Tex. Crim. App. 2006)).

In his second issue, Ibanez argues the evidence was factually insufficient to support the jury's implicit rejection of his defense claim of alibi.  As summarized above, Liana testified Ibanez was home at the time of the shooting.  According to Ibanez, this testimony accounts for his presence during the time of the fatal shooting and as a result, his alibi evidence, when compared to the State's evidence, renders the evidence too weak to support the jury's implicit rejection of his defense claim.

Viewing all the evidence in a neutral light, we cannot conclude the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust on the basis of the testimony of one alibi witness.  *See Steadman*, 280 S.W.3d at 246; *Doucette v. State*, No. B14-91-00095-CR, 1993 WL 522288, at *2 (Tex. App.—Houston [14th Dist.] 1993) (refusing to find evidence insufficient on basis of testimony from two alibi witnesses).  Simply because Ibanez presents a different version of facts does not render the evidence factually insufficient to support the conviction.  *See id.*; *see also Anderson v. State*, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 870 (1986) (highlighting appellant's presentation of different version of events does not render evidence factually insufficient to support conviction).  The jury is free to accept or reject all or any portion of any witness's testimony, including Liana's testimony, and by finding Ibanez guilty, the jury implicitly rejected Liana's testimony, and

therefore Ibanez's alibi defense. *See Adelman*, 828 S.W.2d at 422; *Heiselbetz*, 906 S.W.2d at 504; *Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App—Houston [1st Dist.] 2004, pet. ref'd) (pointing out although appellant presented alibi defense, evaluation of witness's testimony is within exclusive province of jury).

Accordingly, because a rational trier of fact could have concluded beyond a reasonable doubt that Ibanez committed the murder of Garcia based on the State's evidence, we hold the evidence was factually sufficient to support Ibanez's conviction and the jury's implicit rejection of Ibanez's defense of alibi. Ibanez's first and second points of error are overruled.

## CONCLUSION

We affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH